IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| ANNETTE HAMBRICK, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION NO. 5:07-00779 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|       Defendant. | ) |

## M E M O R A N D U M   O P I N I O N

      This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 16 and 17.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 4 and 5.)

      The Plaintiff, Annette Hambrick (hereinafter referred to as "Claimant"), filed an application for SSI on December 5, 2005 (protective filing date), alleging disability as of September 8, 2005, due to lung problems, high blood pressure, and an enlarged heart.[1] (Tr. at 68-72, 73, 81.) The claim was denied initially and upon reconsideration. (Tr. at 54-56, 59-61.) On November 16, 2006, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 52.) The hearing

---

[1] In response to how her conditions limited her ability to work, Claimant stated: "Whenever I walk or bend I lose my breath. I get dizzy. I can't take in air. I have uncontrolled blood pressure. I'm on a lot of medicines." (Tr. at 82.) She further stated that she stopped working on September 8, 2005 because she "had full blown pneumonia. My lungs wouldn't take in air. I was hospitalized. I am still experiencing complications from pneumonia." (*Id.*) Claimant reported that she receives supplemental oxygen on a continuous basis. (Tr. at 81.)

was held on June 14, 2007, before the Honorable Mark A. O'Hara. (Tr. at 398-340.) By decision dated August 31, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-28.) The ALJ's decision became the final decision of the Commissioner on October 26, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 5-7.) On December 3, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain

v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because though Claimant had worked since December 5, 2005, her application date, the record did not support a decision based solely on work activity. (Tr. at 14, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from "a respiratory impairment (asthma and COPD), a circulatory impairment (hypertension, hypercholesterolemia, peripheral vascular disease, and cardiovascular disease), and diabetes, the combination of which were severe impairments. (Tr. at 14, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 24, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity for work at the sedentary level of exertion, as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work (lift or carry 10 pounds occasionally and less than 10 pounds frequently, stand or walk at least 2 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday) that involves no climbing ladders, ropes, or scaffolds and only occasional crawling and that avoids concentrated exposure to workplace hazards (such as unprotected heights and moving machinery) or respiratory irritants (such as fumes, odors, dust, gases, and poor ventilation).

(Tr. at 24, Finding No. 4.) At step four, the ALJ found that Claimant could not return to her past relevant work. (Tr. at 27, Finding No. 5.) On the basis of testimony of a Vocational Expert ("VE")

3

taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as an interviewer, a receptionist/information clerk, and a general office clerk. (Tr. at 27-28, Finding No. 9.) On this basis, benefits were denied. (Tr. at 28, Finding No. 10.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on March 7, 1961, and was 46 years old at the time of the administrative hearing, June 14, 2007. (Tr. at 27, 68, 305.) Claimant had an eleventh grade education and a Generalized Equivalency Diploma. (Tr. at 27, 88, 306.) In the past, Claimant worked as a certified nursing assistant, laundry worker, and motel maid. (Tr. at 82-83, 90-91, 334.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in not giving great weight to the opinion and residual functional capacity assessment of Claimant's treating physician, Dr. J. J. Gordinho, M.D., without suitable explanation as to why he failed to give greater weight to Dr. Gordinho's opinion. (Document No. 16 at 2, 9-12.) Specifically, Claimant alleges that in violation of 20 C.F.R. §§ 404.1527(d)(2)-(6) and 416.927(d)(2)-(6), the ALJ failed to mention

> the length of the treatment relationships, the extent of the treatment or specialization of the doctors providing opinions on functional capacity and no explanation as to why he found Doctor Gordinho's opinion as stated in the medical assessment form not consistent with his own statements on the assessment form and not supported by the claimant's treatment records at Doctor Gordinho's office and not supported by the credible evidence of record.

(Id. at 11.) Claimant contends therefore, that she was left to speculate as to the ALJ's reasoning. (Id. at 12.) Furthermore, Claimant alleges that the ALJ improperly cited Claimant's credibility and earnings record and work ethic as grounds for questioning Dr. Gordinho's opinion. (Id.)

The Commissioner asserts that substantial evidence supports the ALJ's decision not to adopt Dr. Gordinho's "unduly restrictive assessment of Plaintiff's ability to sit." (Document No. 17 at 10.) First, the Commissioner points out that a treating physician's opinion is never binding on issues reserved to the Commissioner. (Id.) Second, the ALJ properly noted that Claimant's reported activities of daily living undermined her complaints of disabling symptoms, including her alleged inability to sit for a sufficient time to work. (Id.) Third, the ALJ properly found that Dr. Gordinho's

5

assessment was unsupported and contradicted by the medical findings of record. (Id. at 11.) Fourth, the evidence of record revealed only de minimis treatment of Claimant by Dr. Gordinho. (Id. at 12.) Fifth, Dr. Gordinho's own clinical findings from his April 14, 2007, examination of Claimant were benign. (Id.) Sixth, Dr. Gordinho's assessment was undermined by the ALJ's own observations from the administrative hearing. (Id.) Seventh, and finally, the penmanship contained within the body of the assessment did not match Dr. Gordinho's signature at the conclusion of the assessment. (Id. at 13.) For these reasons, the Commissioner asserts that the ALJ's decision not to accord significant weight to Dr. Gordinho's opinion is supported by substantial evidence.

Analysis.

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2006). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater,

94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2006).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2006). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473

7

(1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2006). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a

claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2006). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted

above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

The medical evidence of record reveals that on September 9, 2005, Claimant was diagnosed with clinical pneumonia, shortness of breath, asthma, and hypertension at the Rupert Primary Care. (Tr. at 16, 191.) She subsequently was hospitalized with pneumonia. (Tr. at 16, 190.) Following her release, Claimant presented to Rupert Primary Care on September 12, 2005, with rales and rhonchi but no wheezing or decreased breath sounds. (Id.) She was diagnosed with bronchitis, allergic rhinitis, and uncontrolled hypertension. (Id.) Claimant reported on September 16, 2005, that she felt much better and was breathing the best that she had in a long time. (Tr. at 16, 187.)

On October 10, 2005, Claimant was examined at the Rainelle Medical Center and assessed with chronic obstructive pulmonary disease ("COPD") and gastroesophageal reflux disease ("GERD"), though she had no complaints at that time. (Tr. at 15, 158-59.) On December 12, 2005, Claimant was examined by Dr. Mark A. Byrd, M.D., on referral from Rupert Primary Care Clinic for evaluation of COPD. (Tr. at 15, 163-64.) Claimant reported that she smoked half a pack of cigarettes a day with a recent history of two and one half packs a day. (Tr. at 15, 163.) Dr. Byrd observed that Claimant was morbidly obese and that she breathed comfortably at rest. (Tr. at 15, 164.) On exam, Dr. Byrd noted distant heart sounds with a regular rate and rhythm and good peripheral pulses, and clear lungs with decreased air movement throughout. (Id.) However, simple spirometry testing revealed a mild to moderate obstructive ventilatory impairment. (Id.) Dr. Byrd

diagnosed COPD/asthma and opined that because Claimant's pulmonary functions were not as bad as expected, she most likely had asthma and not COPD. (Id.) He further diagnosed morbid obesity and possible pulmonary hypertension. (Id.) Dr. Byrd strongly encouraged smoking cessation and weight loss, and asked Claimant to continue using oxygen all day, especially at night while sleeping. (Id.)

In a follow-up examination on January 12, 2006, Claimant reported improvement in all her symptoms with a change in medications, but also reported that she had not stopped smoking. (Tr. at 15, 162.) She indicated that she had cut back to three cigarettes a day. (Id.) On exam, Dr. Byrd again noted that Claimant was overweight and noted that her lungs were clear with good air movement. (Id.) Dr. Byrd however, assessed severe COPD complicated by obesity and continued smoking and strongly encouraged smoking cessation and weight loss. (Id.)

On February 28, 2006, Dr. Karen Sarpolis, M.D., a state agency physician, completed a form Physical Residual Functional Capacity Assessment. (Tr. at 18, 196-203.) Dr. Sarpolis opined that Claimant could lift occasionally twenty pounds and frequently ten pounds; could sit, stand, or walk about six hours in an eight-hour workday; and that her ability to push and pull was unlimited. (Tr. at 18, 197.) She further opined that Claimant could occasionally climb ramps or stairs, but could never climb ladders, ropes, or scaffolds. (Tr. at 18, 198.) Dr. Sarpolis opined that Claimant frequently could balance, stoop, kneel, and crouch, but only occasionally crawl. (Id.)

On September 20, 2006, Dr. A. Rafael Gomez, M.D., a second state agency physician, completed a form Physical Residual Functional Capacity Assessment. (Tr. at 18, 215-22.) Dr. Gomez noted that the only changes since Dr. Sarpolis' assessment, was the LVH by EKG. (Tr. at 18, 220.) Dr. Gomez therefore opined that Claimant was capable of performing light exertional level work, with the ability to sit, stand, or walk for about six hours in an eight-hour workday. (Tr. at 18,

216.) He further opined that Claimant could climb ramps or stairs, balance, stoop, kneel, or crouch on a frequent basis; could crawl on an occasional basis; could never climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to hazards, fumes, odors, dusts, gases, and poor ventilation. (Tr. at 18, 219.)

On November 28, 2006, Claimant's treating physician, Dr. J.J. Gordinho, M.D., completed a form Medical Assessment of Ability to Do Work-Related Activities (Physical). (Tr. at 223-26.) Dr. Gordinho opined that due to decreased sensation in the bilateral upper extremities, low back pain, and shortness of breath on minimal exertion, Claimant was restricted to lifting fifteen pounds occasionally and ten pounds frequently. (Tr. at 19-20, 26, 223.) He further opined that Claimant's ability to walk was limited to two hours total in an eight-hour workday in fifteen minute intervals due to shortness of breath on minimal exertion and that her ability to sit likewise was limited to two hours total in an eight-hour workday in fifteen minute intervals, though he offered no medical findings supporting the sitting assessment. (Tr. at 19-20, 26, 224.) Dr. Gordinho assessed that Claimant could never climb, balance, stoop, crouch, kneel, or crouch. (Id.) He also opined that Claimant's ability to reach, handle, feel, push or pull, or see, was affected by her back pain, body habitus, decreased sensation in the bilateral upper extremities, and shortness of breath. (Tr. at 19-20, 26, 225.) Dr. Gordinho noted Claimant's hypoxin, constant supplemental oxygen use, coronary artery disease, known low back pain, and reduced ejection fraction at forty percent. (Id.) Due to frequent dizziness resulting from uncontrolled hypertension and severe shortness of breath, as well as the assessed hypoxin, COPD, cardiomyopathy, and morbid obesity, Claimant was subject to the following environmental restrictions: heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity, and vibration. (Id.) In conclusion, Dr. Gordinho opined that due to Claimant's coronary artery disease, hypoxia, COPD, carpal tunnel syndrome, morbid obesity,

uncontrolled hypertension, cardiomyopathy, and persistent low back pain, "it is impossible for her to be employed. [She is a] severe risk to herself and to her co-workers. This lady is the definition of disabled." (Tr. at 19-20, 26, 226.)

In his decision, the ALJ summarized the medical and opinion evidence of record and concluded that Dr. Gordhino's assessment that Claimant was limited to lifting and carrying ten pounds frequently and 15 pounds occasionally generally was compatible with the DDS assessment and with Claimant's "massive obesity and chronic respiratory complaints." (Tr. at 19.) The ALJ further determined that Dr. Gordinho's assessment that Claimant was limited to standing or walking for 15 minutes at a time and two hours per work day was more restrictive than the DDS assessment but nevertheless permitted Claimant to perform at least sedentary and light bench work. (Id.) Dr. Gordinho's assessed postural and environmental limitations were found to exceed the DDS assessments, but again, did not preclude sedentary or light bench work. (Id.) Finally, the ALJ concluded that Dr. Gordinho's assessment that Claimant was limited to sitting 15 minutes at a time and two hours total per day was not entitled controlling weight. (Tr. at 19.) The ALJ explained that this assessment was not supported by Dr. Gordinho's statements on the assessment form, Claimant's records from Rupert Primary Care and other treating sources, and the credible evidence of record. (Tr. at 19-20.)

The Court will address first Dr. Gordinho's summary statement on the assessment form. In restricting Claimant to sitting two hours a day and for 15 minutes at a time, Dr. Gordinho stated "see summary." (Tr. at 20, 224.) The ALJ inferred that the summary presumably was the paragraph contained on the last page of the assessment, which stated as follows:

> Mrs. Hambrick has attempted to function despite her disabilities of coronary artery disease, hpoexia, COPD, carpal tunnel syndrome, morbid obesity, uncontrolled hypertension, cardiomyopathy, and persistent LBP. However, with these

13

> combinations it is impossible for her to be employed without severe risk to herself
> and her coworkers. This lady is the definition of disabled.

(Tr. at 20, 226.) The ALJ found that this summary statement however, neither explained nor justified the assessment of Claimant's ability to sit. (Tr. at 20.) Rather, the ALJ found that the summary statement sought "to portray the claimant as striving to work and function despite her problems; however, the claimant's earnings record does not indicate that she ever demonstrated a particularly strong work ethic, and her treatment records do not indicate that she made particularly strong efforts to improve her functional capacities through weight loss, smoking cessation, exercise, or physical therapy." (Id.) Though Claimant takes issue with the ALJ's reference to her earnings statements and work ethic, the Court finds that such reference was intended to show a history of lack of work, whether for medical reasons or otherwise. It tends further to support the ALJ's finding that despite her problems, Claimant failed to follow directions to stop smoking or lose weight. (Tr. at 26.)

   The ALJ further found that the summary statement misstated and distorted the evidence of record in that there was no evidence that Claimant was diagnosed with CTS, or that her treatment notes from Rupert Primary Care demonstrated that she suffered persistent low back pain or uncontrolled hypertension. (Tr. at 20.) The absence of CTS with EMG/NCV studies and back pain without radiographic studies, failed to substantiate Dr. Gordinho's sitting assessment. (Tr. at 26.) These factors did not weigh directly on Claimant's ability to sit, and therefore, did not support Dr. Gordinho's assessment. Thus, the ALJ properly did not give controlling weight to Dr. Gordinho's assessment regarding Claimant's ability to sit because Dr. Gordinho failed to explain or justify his assessment and because the assessment was inconsistent with the other evidence of record.

   Next, the ALJ noted a discrepancy between the penmanship of the signature on the assessment and the penmanship of the notations. (Tr. at 20.) The ALJ concluded that these factors

justified according limited weight to the assessment and supporting statements. (Id.)

The ALJ further noted that Dr. Gordinho's assessment was not supported by his examinations or treatment because there was no evidence of extensive treatment. (Tr. at 20.) Rather, Claimant was primarily examined and treated by Dr. Gordinho's physician's assistant, George Bryant. (Id.) The ALJ therefore, found that Dr. Gordinho's assessment was based either on Mr. Bryant's assessment or on Claimant's subjective complaints. (Id.) The ALJ summarized Mr. Bryant's numerous examinations of Claimant. (Tr. at 21-22.) Though Claimant may have considered Dr. Gordinho her treating physician, she actually saw Mr. Bryant on more occasions. Dr. Gordinho's examination findings on April 14, 2007, when he actually examined Claimant, were unremarkable. (Tr. at 294.) Claimant exhibited full range of motion of all extremities with only mild edema. (Id.) There was nothing to suggest significant limitations in Claimant's ability to sit. (Id.) Thus, the ALJ properly considered this factor under the Regulations in discounting Dr. Gordinho's sitting assessment.

Furthermore, the ALJ found that Dr. Gordinho's assessment was undermined by the ALJ's observation of Claimant sitting for more than one hour without getting up or appearing to be in particular discomfort during the administrative hearing. (Tr. at 20.) The ALJ found that the "fact that the claimant sat for more than an hour during the hearing is objective proof that Dr. Gordinho's assessment at Exhibit 8F is overly restrictive and does not accurately assess the claimant's maximum residual functional capacity." (Id.)

The ALJ also found that the minimal and conservative treatment record and the lack of referral to, examinations by, or treatment with appropriate specialists, undermines Dr. Gordinho's restrictive sitting assessment. (Tr. at 26.) Finally, the ALJ noted that Claimant's activities of daily living undermined her complaints of disabling symptoms and included activities undermining Dr.

Gordinho's restrictive sitting assessment. (Tr. at 26.) The ALJ noted that Claimant played cards and computer games, which activities generally are performed while sitting. (Tr. at 26.) Furthermore, as the Commissioner points out, Claimant reported that she folded clothes while sitting at a table, washed dishes while sitting at the sink, drove or rode in a car, read, watched television, sewed, knitted, crocheted, and wrote, all further activities generally performed while sitting. (Tr. at 118-25.) Thus, to the extent that the ALJ considered Claimant's credibility in not giving significant or controlling weight to Dr. Gordinho's assessment, such consideration was proper as it directly related to the sitting assessment.

Based on the foregoing and contrary to Claimant's arguments, the ALJ thoroughly explained why controlling weight was not accorded to Dr. Gordinho's assessment. The ALJ specifically summarized the treatment notes of record in his decision, and noted that Claimant was not referred for extensive treatment or to specialists. Accordingly, the Court finds that the ALJ's decision not to accord controlling weight to Dr. Gordinho's restrictive sitting assessment was in conformity with the Regulations and supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 16.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 17.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 30, 2009.

R. Clarke VanDervort
United States Magistrate Judge

16